# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE

NINA ELDREDGE,

     **Plaintiff,**

    **v.**                           **NO. _____**

**ADS SECURITY, L.P**

                                       **JURY DEMANDED**

     **Defendant.**

## COMPLAINT

**PLAINTIFF, NINA ELDREDGE,** files this Complaint and shows:

## I.     PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, NINA ELDREDGE is a citizen and resident of Franklin, Tennessee.

2.     Defendant ADS SECURITY, L.P. is a Pennsylvania company with a principal place of business at 2000 Ericsson Dr, Warrendale, PA 15086-6507. It may be served with process through its registered agent: CT Corporation System, 300 Montvue Rd, Knoxville, TN 37919-5546.

3.     Jurisdiction is proper under 28 U.S.C. § 1331, and Title VII, 42 U.S.C. 2000(e) et. seq. Ms. Eldredge timely filed a charge of discrimination with EEOC under Title VII. EEOC mailed her a Notice of Right to Sue on March 10, 2020. Accordingly, this matter is brought within the requisite ninety (90) days thereafter.

4. Venue is proper in this division of the Middle District pursuant to 28 U.S.C. §1391 because ADS Security employed, and then terminated, the employment of Eldredge within this jurisdictional division.

## II. FACTS

5. This is a gender discrimination and sexual harassment case involving the historically male-dominated salesperson positions for security devices.

6. Ms. Nina Eldredge, female, worked in the insurance and financial industries for nearly 30 years. She began with ADS Security ("ADS) in September 2018 as a "Life Safety Consultant" in ADS's Nashville branch, its corporate office. Based upon performance, ADS informed Ms. Eldredge that she could expect to earn between $150,000 to $200,000 in her first year. With her financial background, Ms. Eldredge accepted the position with that anticipation.

7. ADS, too, was interested in Ms. Eldredge's background and contacts in the business community. Once hired, Ms. Eldredge used this experience and contacts, recruiting and servicing ADS clients while gaining high-profile events like the Nashville Antique and Garden Show.

8. To her knowledge, Ms. Eldredge is the first woman to have ever worked in the male-dominated world of *sales* at ADS's corporate office. The other female branch employees worked in office positions. Immediately after her hire, Ms. Eldredge would experience gender discrimination.

9. On September 20, 2018, Mr. Rand Reese, a senior salesman, accompanied Ms. Eldredge to a client meeting. The meeting was uncomfortable because Mr. Reese minimized her role and questioned her credentials. Although Ms. Eldredge obtained the customer and had forged

a good relationship, he entered the customer's home without Ms. Eldredge, did not allow her to participate, and even stated that she "knew nothing about Alarm systems" in the presence of the customer. Ms. Eldredge felt marginalized as a woman.

10. That same day, Ms. Eldredge reported how she believed the conduct was discriminatory to the sales manager for the Nashville branch. However, no investigation was conducted and no measures were taken.

11. After this meeting, some colleagues informed Ms. Eldredge about Mr. Reese. They said he is generous toward female office employees in the sense of bringing them breakfast, and leaving them money ($20 bills and sometimes $100 bills). However, they said he had views about the place of women, stating that sales is "no place for women" and "it is a man's business." "He's just like that," they said.

12. Having experienced the discrimination and heard from others, the following day, Ms. Eldredge reported her concerns of sex discrimination to the branch manager, Brian McGuire. Without speaking to Mr. Reese, Mr. McGuire claimed he did not believe this was said, and if there were a problem, for Ms. Eldredge to work it out with Mr. Rand.

13. In November 2018, a male salesman, Jody Haslam, was hired. Ms. Eldredge had to interact with him frequently, and Mr. Haslam made her uncomfortable as a female. That is, Mr. Haslam would always touch Ms. Eldredge on the arm, shoulder, hand, back, or even knee when they talked. He also stared too long, got too close, hugged her unnecessarily, and made inappropriate comments like how much he missed her.

14. On Monday, December 3, 2018, Ms. Eldredge discussed a note she had entered in the "One Note" software indicating she would avoid Mr. Jody Haslam. She explained to a sales

manager, Mike Dove, the context of that One Note entry and that she was uncomfortable with all the touching. Mr. Dove said that, with Ms. Eldredge's permission, he would report the matter to higher management and then to Human Resources. Believing it might be taken more seriously, Ms. Eldredge gave permission and Mr. Dove later confirmed he had made the reports.

15. A day later, December 4, 2018, branch manager McGuire wrote an email claiming that Ms. Eldredge and two men "have basically sold nothing in over a month to a month and a half or longer," that there have been "multiple face to face convos [and] …documented email messages," and these persons will be moved if they do not improve. In truth, Ms. Eldredge had only begun in September of 2018 and had numerous sales that would close that same year, December 2018.

16. On December 17, 2018, Mr. McGuire sent Ms. Eldredge an email stating she would have a "mid month review" on December 18, 2018. However, on December 18, 2018, Mr. McGuire informed Ms. Eldredge that she was terminated.

17. Men who *were* underperforming were not terminated at this time. Mr. McGuire advised Ms. Eldredge that he was transferring Ms. Eldredge's clients to Senior Sales personnel— those persons are Rand Reese and Jody Haslam—the two men she reported for discrimination and harassment.

18. Poor performance is demonstrably untrue. Ms. Eldredge's numbers were not even compiled (business numbers were to be submitted the very week she was terminated, and the evaluation cycle did not end until January 2019). Additionally, her month-to-month projections were well above what was expected for new employees; they also outstripped a similarly situated male new hire; and other sales team members (all men). Moreover, in late November 2018 (before

she reported sexual harassment), she was invited to join ADS's retirement plan, eligibility for which is based on favorable performance numbers.

19. In summary, Ms. Eldredge asserts that she experienced sexually discriminatory and harassing conduct—about which she complained—and that she was terminated because of her sex or in retaliation for her complaints of discrimination/harassment.

20. Not only has she suffered damages associated with her employment itself (lost wages, commissions, benefits and advancement) but also emotional distress in the form of humiliation and embarrassment. She seeks these damages along with punitive damages, as the conduct and the termination were intentional in nature (an intentional deprivation of her rights).

## III. CAUSES OF ACTION

## Title VII

21. Plaintiff, Ms. Eldredge, incorporates by reference all allegations in all other sections. She brings **Title VII** claims against Defendant for:

    a. Gender/sex harassment;

    b. Sex discrimination.

    c. Retaliation for reporting discrimination and harassment because of sex/gender.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Ms. Eldredge, respectfully prays for the following relief:

1. That proper process issue with regard to Defendant;

2. That the Court or jury award her loss of past and future earning capacity, back pay and front pay (or reinstatement);

3. That the Court or jury award her compensatory damages;

4. That the Court or jury award her punitive damages;

5. That the Court or jury award her reasonable attorneys' fees and costs;

6. That this matter be tried before a jury; and

7. That the Court or jury issue any and all other relief that is just and reasonable.

Respectfully submitted,

**GILBERT LAW, PLLC**

s/Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423-756-8203s
Facsimile: 423-756-2233
justin@schoolandworklaw.com
*www.schoolandworklaw.com*